# IN THE UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | | |
|---|---|---|
| NICHOLAS MORROW, | ) | |
| | ) | |
|    Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 3:19-cv-00351 |
| | ) | |
| THE METROPOLITAN GOVERNMENT | ) | JUDGE CAMPBELL |
| OF NASHVILLE AND DAVIDSON | ) | MAGISTRATE JUDGE HOLMES |
| COUNTY, TENNESSEE, et al., | ) | |
| | ) | |
|    Defendants. | ) | |

## MEMORANDUM

### I. Introduction

Pending before the Court are Defendant Ryan Storm and Marcus Darden's Motion to Dismiss Second Amended Complaint (Doc. No. 41), Defendant Brittany McElwee, Edin Plancic, and Nicholas Carroll's Motion to Dismiss Second Amended Complaint (Doc. No. 54), Defendant Officer Merriweather's Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. No. 58), Defendant Vanderbilt University Medical Center's Rule 12(c) Motion for Judgment on the Pleadings (Doc. No. 70), and Defendant Vanderbilt University Medical Center's Motion to Exclude Plaintiff's Notice of Filing Interrogatory Response and Related Documents (Doc. No. 85).

For the reasons set forth below, Defendant Ryan Storm and Marcus Darden's Motion to Dismiss Second Amended Complaint (Doc. No. 41), Defendant Brittany McElwee, Edin Plancic, and Nicholas Carroll's Motion to Dismiss Second Amended Complaint (Doc. No. 54), Defendant Officer Merriweather's Motion to Dismiss Plaintiff's Second Amended Complaint

(Doc. No. 58), and Defendant Vanderbilt University Medical Center's Rule 12(c) Motion for Judgment on the Pleadings (Doc. No. 70) are **DENIED.**

In its Motion to Exclude Plaintiff's Notice of Filing Interrogatory Response and Related Documents (Doc. No. 85), Defendant Vanderbilt University Medical Center sought to exclude documents filed by Plaintiff on the issue of whether Plaintiff complied with Tennessee Code Annotated Section 29-26-121. In its Reply brief (Doc. No. 88), Defendant acknowledged that the issue should be deferred until summary judgment. Accordingly, the Motion to Exclude (Doc. No. 85) is **DENIED,** as moot.

## II. Factual and Procedural Background

In the Second Amended Complaint (Doc. No. 39), Plaintiff Nicholas Morrow brings claims against the Metropolitan Government of Nashville and Davidson County, Tennessee ("Metro"), Tommy Widener, Andrew Kooshian, Nicholas Kulp, Marcus Darden, Ryan Storm, Brittany McElwee, Edin Plancic, Nicholas Carroll, Jedidayah Merriweather, and Vanderbilt University Medical Center ("VUMC"), arising out of events that occurred on April 29, 2018. Plaintiff alleges that, on that date at 4:00 p.m., he posted on his Facebook account that "change was coming to Nashville." (*Id.* ¶ 6). According to Plaintiff, he was planning to announce his candidacy as a write-in candidate for governor at that time, and the message was a "teaser." (*Id.* ¶ 7). Previous posts on his account accused Metro, "most notably its police department," of being corrupt. (*Id.* ¶ 8). Plaintiff alleges two of his "enemies" called the Metro Police Department, and "[d]ue either to actual malice or confusion," the callers referenced Plaintiff's Facebook posts; advised that he was an Iraq war veteran with severe PTSD; and "that he *might* be planning to commit mass-murder against the students of a local community college that Sunday afternoon at 4:00." (*Id.* ¶ 9). The callers also allegedly advised that Plaintiff was "delusional" because he

2

believed the Metro Nashville government is corrupt and had posted anti-police comments. (*Id.* ¶ 11).

Plaintiff alleges Metro police began a citywide manhunt for him in response to the "dubious allegations about *possible* crime on a Sunday afternoon, and in response to the Plaintiff's statements about the government's lack of integrity." (*Id.* ¶ 12). According to Plaintiff, he was sitting at home alone waiting to announce his candidacy for governor on Facebook at 4:00 p.m. (*Id.* ¶ 13). Plaintiff alleges that, eventually, numerous armed men from the Nashville Police Department "surrounded and besieged" his house. (*Id.* ¶ 15). A total of 20 officers were allegedly present, and "the leaders of the campaign to trespass" against Plaintiff's home were Captain Tommy Widener, Sergeant Andrew Kooshian, and Sergeant Nicholas Kulp. (*Id.* ¶¶ 16-17). Plaintiff alleges the police approached his front door and banged on his windows, but he declined to answer. (*Id.* ¶ 18). According to Plaintiff, the "siege" continued for five to six hours. (*Id.* ¶ 19).

During that time, the police allegedly contacted Mobile Crisis Services, a division of the Tennessee Department of Mental Health, and falsely stated Plaintiff was psychotic and delusional based on the Facebook posts, and requested a psychological order to arrest him. (*Id.* ¶ 20). Plaintiff alleges Mobile Crisis Services then called him and asked if he was planning to hurt himself or others. (*Id.* ¶¶ 21-22). When Plaintiff explained that he was not, the call ended, but the police concluded Plaintiff's failure to continue to speak with Mobile Crisis meant they were at an impasse. (*Id.* ¶¶ 22, 26). According to Plaintiff, no one had accused him of contemplating suicide, or of being a danger to himself; no one else was present in the house; and at no point, did the police obtain a warrant for him or the house. (*Id.* ¶¶ 23-25).

3

During the five or six hours the police were at his house, Plaintiff alleges, multiple officers, including Defendants Darden, Storm, McElwee, Plancic, Carroll, and Merriweather, invaded his fenced-in back yard. (*Id.* ¶ 29). All were wielding assault rifles, except for Defendant Darden, who was wielding a tazer. (*Id.* ¶ 30). At some point, Defendant Storm allegedly walked up to the house and turned off the air conditioner in an effort to coerce Plaintiff to come outside. (*Id.* ¶ 28).

Plaintiff alleges he eventually allowed his dog to go outside to relieve itself. (*Id.* ¶ 31). When she encountered the dog, according to Plaintiff, Defendant McElwee began "engaging in hand-to-hand combat against the dog," and the dog cried out in pain. (*Id.* ¶¶ 32-34). Plaintiff then stepped outside onto his back porch, saw officers injuring his dog, and signaled for the dog to come to him. (*Id.* ¶¶ 35-37). When the police approached him to make a warrantless arrest, Plaintiff allegedly told them he had done nothing wrong, and turned to go back in the house. (*Id.* ¶¶ 38-39). At that point, Defendant Darden allegedly struck Plaintiff in the back with the tazer, and Plaintiff collapsed to the ground. (*Id.* ¶ 40). As Plaintiff attempted to get up off the ground, multiple officers pounced on his back, and one officer, believed to be Defendant Storm, kick his left elbow, breaking his arm. (*Id.* ¶ 41). The police arrested Plaintiff and detained him inside a squad car for interrogation. (*Id.* ¶ 42).

At that point, Plaintiff alleges, a psychologist from Mobile Crisis Services attempted to interview him, but he said he was not interested in having a discussion because of the conduct of the police. (*Id.* ¶ 43). According to Plaintiff, the police took him to Vanderbilt Psychiatric Hospital for incarceration, where he was confined by VUMC employees for five days without the approval of a judge. (*Id.* ¶¶ 44-46). Plaintiff alleges the "sham trial" that occurred after five days, authorizing continued imprisonment, was void *ab initio*. (*Id.* ¶¶ 47-48).

4

The Complaint asserts five claims arising out of these allegations: (1) Unreasonable Seizure in Violation of the Fourth Amendment: Warrantless Entry, Excessive Force, and False Arrest, under 42 U.S.C. § 1983, against Defendants Metro, Widner, Kooshian, and Kulp (Count 1); (2) Retaliation for Protected Speech in Violation of the First Amendment, under 42 U.S.C. § 1983, against Defendants Metro, Widener, Kooshian, and Kulp (Count 2); (3) Trespass, under Tennessee Common Law, against Defendants Darden, Storm, McElwee, Plancic, Carroll, and Merriweather (Count 3); (4) Negligence *Per Se*, under Tennessee Code Annotated Section 33-6-414, against VUMC (Count 4); and (5) False Imprisonment, under Tennessee Common Law, against VUMC (Count 5). (*Id.* ¶¶ 56-74).

### III. Analysis

**A. Standards Governing Motions to Dismiss and Motions for Judgment on the Pleadings**

In considering a motion to dismiss, a court must determine whether the plaintiff has sufficiently alleged "a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). Well-pleaded factual allegations are accepted as true and are construed in the light most favorable to the nonmoving party. 129 U.S. at 1950; *Mills v. Barnard*, 869 F.3d 473, 479 (6th Cir. 2017).

"After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The standard for evaluating a motion for judgment on the pleadings is the same as that applicable to a motion to dismiss under Rule 12(b)(6) for failure to state a claim. *Hayward v. Cleveland Clinic Found.,* 759 F.3d 601, 608 (6th

5

Cir. 2014). "In reviewing a motion for judgment on the pleadings, we construe the complaint in the light most favorable to the plaintiff, accept all the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of the claims that would entitle [him to] relief." *Id.* (internal quotation marks and citations omitted). "The factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, *i.e.,* more than merely possible." *Fritz v. Charter Twp. of Comstock,* 592 F.3d 718, 722 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 677, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)).

## B. The Trespass Claim

Through their Motions, Defendants Darden, Storm, McElwee, Plancic, Carroll, and Merriweather argue Plaintiff's trespass claim should be dismissed because (1) Plaintiff does not own the property at issue; (2) the claim is barred by the statute of limitations; and (3) Defendants had lawful authority to be on the property.

Defendants initially argued Plaintiff could not bring a trespass claim because he is not the owner of the property where the alleged trespass took place. Tennessee courts have long recognized, however, that a trespass action may be brought by a person who is either in actual possession of the property at issue, or in constructive possession by virtue of holding legal title. *See, e.g., East Tennessee Natural Gas Co. v. Peltz,* 38 Tenn. App. 100, 131, 270 S.W.2d 591 (Tenn. Ct. App. 1954); *Doss v. Tennessee Products & Chemical Corp.,* 47 Tenn. App. 577, 585, 340 S.W.2d 923, 927 (Tenn. Ct. App. 1960) ("Complainants are not required to establish a valid subsisting legal title to the land, actual possession thereof and absence of valid legal title in the defendant is enough."); *City of Cowan, Tennessee v. City of Winchester, Tennessee*, 121 F. Supp.

6

3d 795, 808 (E.D. Tenn. 2015). Plaintiff alleges he was in actual possession of the property (Doc. No. 39 ¶ 27), and therefore, Defendants' "standing" argument is without merit.

In a later brief, Defendants argue that because he does not own the property, Plaintiff must show damage *to the property* in order to bring an action in trespass because he is relying on the three-year statute of limitations for "[a]ctions for injuries to personal or real property." Tenn. Code Ann. § 28-3-105(1). Defendants contend the one-year statute of limitations for personal injury claims applies instead, and Plaintiff's claim is barred under that statute. Plaintiff argues the three-year statute of limitations applies to trespass actions, and therefore, his claim is not time-barred.

The nature of damages recoverable in trespass actions suggests the statute applicable to injuries to property applies here. In Tennessee, damages in trespass actions "are to compensate the injured party and to punish the trespasser and deter their wrongful conduct." *Perlaky v. Chapin,* 2018 WL 3603004, at *2 (Tenn. Ct. App. July 27, 2018) (citing *Meighan v. U.S. Sprint Communications,* 924 S.W.2d 632, 641 (Tenn. 1996)). Damages are to reflect "the injury to the value of the use and enjoyment of the property." *Id.* Specifically, a plaintiff may recover compensatory damages or nominal damages (in the absence of compensatory damages), as well as punitive damages in appropriate cases. *Perlaky,* 2018 WL 3603004, at *2; *Meighan,* 924 S.W.2d at 641-42.

Beyond simply stating their argument, Defendants have not cited authority suggesting Section 28-3-105(1) does *not* apply to trespass actions, or that it applies only to trespass actions in which a plaintiff can demonstrate the trespass resulted in actual damage *to the property*. Here, Plaintiff alleges loss of enjoyment of the property, as well as harm to his dog, as a result of the

7

alleged trespass. (Doc. No. 39 ¶ 67). Consequently, Defendants have failed to show the personal injury statute of limitations applies here.

Defendants next argue the one-year statute of limitations for claims brought under the Tennessee Governmental Tort Liability Act ("TGTLA"), Tennessee Code Annotated Section 29-20-305(b), bars Plaintiff's trespass claim.[1] Plaintiff argues the TGTLA does not apply here because Defendants have been sued in their individual, rather than official, capacities. (Second Amended Complaint ¶ 3 (Doc. No. 39) ("To be clear, [the individual defendants] are being sued individually.")).

The TGTLA removes the immunity of governmental entities for injuries proximately caused by a negligent act or omission of an employee acting within the scope of his or her employment unless the injury arises out of certain specifically delineated exceptions. Tenn. Code Ann. § 29-20-205. When a governmental employer retains immunity under one of those exceptions for a particular claim, the plaintiff may maintain that claim against a governmental employee in his or her individual capacity. *See, e.g., Blevins v. Marion County,* 2020 WL 3036359, at 9 (E.D. Tenn. June 5, 2020) (". . . because Marion County is immune with respect to the negligence claim, [plaintiff] may maintain such claims against individual [d]efendants . . ."); *Colson v. City of Alcoa, Tennessee*, 2017 WL 4019596, at *11 (E.D. Tenn. Sept. 11, 2017) ("In other words, the TGTLA does not provide governmental entities and employees with simultaneous immunity."); *Baker v. Snyder*, 2006 WL 2645163, at *10 (E.D. Tenn. Sept. 14, 2006) ("When the TGTLA reserves immunity for governmental entities and employees in their

---

[1] Although not initially raised in their motion to dismiss, Defendants Storm and Darden subsequently moved to supplement their motion to add this argument. (Doc. No. 56). The Court granted the request. (Doc. No. 57).

official capacities, it allows plaintiffs to proceed against government employees in their individual capacities under Tennessee common law, unhindered by the TGTLA."); *cf.* Tenn. Code Ann. § 29-20-310(b) ("No claim may be brought against an employee . . . for damages for which the immunity of the governmental entity is removed by this chapter unless the claim is one for health care liability brought against a health care practitioner.").

Because intentional trespass is one of the exceptions listed in Section § 29-20-205(2), Metro, the governmental entity that employed the defendants, is immune from suit on the trespass claim. Thus, a plain reading of the statute and the case law cited above indicates that Plaintiff may bring an intentional trespass claim against the defendants in their individual capacity, and the TGTLA does not apply to such a claim.

Defendants argue this conclusion is in error because it conflicts with another provision of the TGTLA, Tennessee Code Annotated Section 29-20-313(a), which states:

> (a) When one (1) or more defendants to a lawsuit claim to be employees of a governmental entity as defined by § 29-20-107 and are therefore entitled to the governmental immunity granted by this chapter, it shall be a question of fact whether the defendant or defendants claiming immunity are such employees. If the trier of fact determines that the defendant claiming immunity is not a governmental entity employee, the lawsuit as to that defendant shall proceed like any other civil case. If the trier of fact determines that the defendant claiming immunity is a governmental entity employee, the lawsuit as to that defendant shall proceed in accordance with this chapter.

Defendants construe this provision as holding that "any defendants who claim to be employees of a governmental entity covered by the GTLA – defendants such as Sgt. McElwee and Officers Carroll and Plancic – 'are therefore' entitled to the 'immunity' granted by the GTLA." (Doc. No. 55, at 7). Defendants also rely on Tennessee Code Annotated Section 29-20-310(c)[2], which they

---

[2] Section 310(c) provides:

interpret as applying "to an intentional tort claim against a government employee (like the claim against these Defendants), even where the government is immune for the claim." (Doc. No. 55, at 8). In other words, based on Defendants' proposed interpretations, every action against a governmental employee in his individual capacity would be governed by the provisions of the TGTLA, and its statute of limitations.

Defendants' reading of the statute is not consistent with case law. In *Fann v. City of Fairview,* 905 S.W.2d 167, 174 (Tenn. Ct. App. 1995), the individual defendants cited the same provisions Defendants cite in arguing they were entitled to the same governmental immunity afforded to their employer. The Tennessee Court of Appeals rejected such a broad reading of the statute:

> The Tennessee Governmental Tort Liability Act is in derogation of the common law and must be strictly construed. *Lockhart v. Jackson–Madison County Gen. Hosp.,* 793 S.W.2d 943, 945 (Tenn.App.1990). Upon construing the pertinent provisions of the Act, it is quite apparent that the governmental immunity afforded governmental entities has not been extended to the governmental employee. § 29–20–205 specifically addresses the immunity, and removal thereof, of 'governmental entities.' We recognize that the Act, in fact, does immunize to a certain extent the employee in instances where the entity is itself liable. However, the exception to the removal of governmental immunity applicable to the governmental entity has not been extended to the governmental employee.

---

(c) No claim may be brought against an employee or judgment entered against an employee for injury proximately caused by an act or omission of the employee within the scope of the employee's employment for which the governmental entity is immune in any amount in excess of the amounts established for governmental entities in § 29-20-403, unless the act or omission was willful, malicious, criminal, or performed for personal financial gain, or unless the act or omission was one of health care liability committed by a health care practitioner and the claim is brought against such health care practitioner. As used in this subsection (c), 'health care practitioner' means physicians licensed under title 63, chapter 6, and nurses licensed under title 63, chapter 7.

10

905 S.W.2d at 174; *see also McCutchen v. Tipton County*, 430 F. Supp. 2d 741, 748 (W.D Tenn. 2006) (The TGTLA "'addresses the liability of governmental entitles only" and "[i]ts jurisdictional limitations do not apply to persons sued individually.'"); *Hughes v. Metropolitan Government of Nashville and Davidson County,* 340 S.W.2d 352, 361 (Tenn. 2011) (The TGTLA must be "strictly construed and confined to its express terms.")

Defendants have not cited any cases in which a Tennessee court has applied the TGTLA statute of limitations to an individual capacity tort action brought against a governmental employee where the governmental employer is immune. Thus, Defendants have not established the TGTLA statute of limitations applies here.

Finally, Defendants argue they had lawful authority to be on the property, and therefore, cannot be held liable for trespass. They had lawful authority, Defendants contend, because "any reasonable police department" would respond to a call under the circumstances alleged. In support, Defendants cite *Twenty Holdings, LLC v. Land South TN, LLC,* 2019 WL 4200970, at *8 (Tenn. Ct. App. Sept. 5, 2019), where the court, quoting a treatise, identified the essential elements of a common law trespass claim as: (1) an intentional entry or holdover, (2) by the defendant or a thing; (3) without consent or legal right. Defendants do not cite authority defining the parameters of "legal right,"[3] nor do they discuss whether their actions complied with relevant Fourth Amendment case law. Therefore, they have failed to establish Plaintiff's claim should be dismissed because Defendants had a "legal right" to be on the property. *See Murphy v. Lazarev,* 653 Fed. Appx 377, 378 (6th Cir. 2016) ("It is not sufficient for a party to mention a possible

---

[3] The Court notes that Defendants cite a case that addresses a previous version of Tennessee's criminal trespass statute (repealed in 1989), which prohibited entry upon the premises of another in defiance of a "lawful order." *State v. Lyons,* 802 S.W.2d 590, 591-92 (Tenn. 1990). Defendants have not explained why this case applies to a common law trespass claim brought in a civil case.

11

argument in [a] skeletal way, leaving the court to put flesh on its bones.")

Even if the Court assumed the legality of Defendants' initial response, however, Plaintiff's allegations are not limited to Defendants' *entry* onto his property. Plaintiff's allegations also extend to Defendants' continued occupation of his property once they allegedly had no reason to remain, and to Defendants' retaliatory motivation for doing so. Whether those allegations can ultimately be established remains to be seen, but they are sufficient to withstand a motion to dismiss.

**C. Claims against VUMC**

As discussed above, Plaintiff asserts two claims against VUMC. The first claim alleges negligence *per se* for violation of Tennessee Code Annotated Section 33-6-414 "[b]y involuntarily committing the Plaintiff in a mental institution for more than twenty-four hours without the approval of a general session judge" as required by the statute. (Doc. No. 39 ¶¶ 68-71). The second claim alleges false imprisonment for "unlawfully detaining the Plaintiff against his will." (*Id.* ¶¶ 72-74).

In its initial briefing, VUMC argued Plaintiff's claims should be dismissed for failure to comply with two requirements set forth in the Tennessee Health Care Liability Act ("THCLA") – the requirement that he file a certificate of good faith with the complaint, as required by Tennessee Code Annotated Section 29-26-122; and the requirement that he send a pre-suit notice to all potential defendants, as required by Tennessee Code Annotated Section 29-26-121. In its most recent brief, VUMC acknowledges that, based on *Martin v. Rolling Hills Hosp. LLC,* 600 S.W.3d 322, 334 (Tenn. 2020), the determination of whether Plaintiff substantially complied with the requirement of filing pre-suit notice should await summary judgment. Thus, the Court need not address that issue.

12

VUMC goes on to argue, however, that even if Plaintiff provided the required pre-suit notice under Section 29-16-121, his claims are still subject to dismissal because he filed the Second Amended Complaint after the expiration of the THCLA's one-year statute of limitations. Tenn. Code Ann. § 29-26-116. That period may be extended when pre-suit notice is provided: Section 29-26-121(c) provides that "[w]hen notice is given to a provider as provided in this section, the applicable statutes of limitations and repose shall be extended for a period of one hundred twenty (120) days from the date of expiration of the statute of limitations and statute of repose applicable to that provider." The parties appear to agree that the operative date for the claims alleged against VUMC is April 29, 2018, and that the 120-day extension of the one-year statute of limitations expired on August 27, 2019. The Second Amended Complaint, naming VUMC as a defendant, was filed on September 6, 2019 (Doc. No. 39).

Although that filing occurred 10 days after the limitations period expired, Plaintiff argues the operative date is not the date the Second Amended Complaint was filed, but rather the date on which he filed the motion to amend the complaint. The Motion to Amend Complaint (attaching the Second Amended Complaint) (Doc. No. 35) was filed on August 26, 2019, one day before the limitations period expired.[4] To support his argument, Plaintiff cites *Frazier v. East Tennessee Baptist Hospital,* 55 S.W. 2d 925 (Tenn. 2001). In *Frazier,* the Tennessee Supreme Court held that "when the motion to amend the complaint and a proposed amended complaint are filed prior to the running of the statute of limitations, the motion to amend stands in place of the actual amended complaint while the motion is under review by the court." 55 S.W. 2d at 930. That the court grants the motion to amend after the limitations period has expired

---

[4] The Magistrate Judge granted the motion to amend on September 6, 2019 (Doc. No. 38).

13

"does not make the amended complaint untimely." *Id.* The Sixth Circuit agrees with this principle. *See Shillman v. United States*, 221 F.3d 1336 (Table), 2000 WL 923761, at *6 (6th Cir. 2000) ("If a motion to amend is granted, the complaint is deemed amended as of the date the proponent of the amendment sought leave to amend, and not when the request is actually granted."); *see also Mayes v. AT & T Information Systems, Inc.,* 867 F.2d 1172 (8th Cir.1989); *Moore v. State of Ind.*, 999 F.2d 1125, 1131, 26 Fed. R. Serv. 3d 669, 1993 WL 269801 (7th Cir. 1993). VUMC has not responded to this argument in its reply brief. Thus, having failed to address the applicability of the case law cited by Plaintiff, VUMC is not entitled to dismissal based on statute of limitations grounds.

As noted above, VUMC also argues Plaintiff failed to comply with Section 29-26-122(a), which provides that "[i]n any health care liability action in which expert testimony is required by § 29-26-115,[5] the plaintiff or plaintiff's counsel shall file a certificate of good faith with the complaint." Plaintiff contends he was not required to file a certificate of good faith because he

---

[5] Section 29-26-115(a) provides:

 (a) In a health care liability action, the claimant shall have the burden of proving by evidence as provided by subsection (b):

(1) The recognized standard of acceptable professional practice in the profession and the specialty thereof, if any, that the defendant practices in the community in which the defendant practices or in a similar community at the time the alleged injury or wrongful action occurred;

(2) That the defendant acted with less than or failed to act with ordinary and reasonable care in accordance with such standard; and

(3) As a proximate result of the defendant's negligent act or omission, the plaintiff suffered injuries which would not otherwise have occurred.

does not need expert medical proof in order to prove his claims, and consequently, falls within the "common knowledge" exception to the certificate of good faith requirement.

Plaintiff's claims are not of the typical medical malpractice variety. The statute on which Plaintiff's negligence *per se* claim is based, Tennessee Code Annotated Section 33-6-414, is part of a chapter on mental health treatment and provides that, if a judge is not available to provide a hearing, an "admitting facility" may not hold a defendant for more than 24 hours.[6] The false imprisonment claim is presumably based on a violation of the same statute. VUMC has not addressed the elements of these two causes of action or the need for expert medical proof to address those elements. VUMC simply states that an expert must testify about the duty of care owed by a hospital to a patient; it does not address the issue of whether an expert is needed to address the failure to comply with the due process requirements of applicable state statutes. Thus, VUMC has not established it is entitled to dismissal on these grounds.

The Court also notes that since the briefs were filed in this case, the Tennessee Supreme Court issued a decision on the "common knowledge" exception. In *Jackson v. Burrell*, 602 S.W.3d 340, 348 (Tenn. 2020), the court discussed the parameters of the exception and held that it applied to plaintiff's claim that a massage therapist sexually assaulted her during a massage:

> Tennessee has long recognized the common knowledge exception in health care liability cases. In *Osunde v. Delta Medical Center*, the Court of Appeals held that 'expert testimony is not required where the act of alleged wrongful conduct lies within the common knowledge of a layperson.' 505 S.W.3d 875, 886–87 (Tenn. Ct. App. 2016) (citing *Baldwin v. Knight*, 569 S.W.2d 450, 456 (Tenn. 1978); *Bowman v. Henard*, 547 S.W.2d 527, 530–31 (Tenn. 1977); *Tucker v. Metro. Gov't of Nashville & Davidson Cnty.*, 686 S.W.2d 87, 92 (Tenn. Ct. App. 1984)).

---

[6] The hearing requirements are described in Tennessee Code Annotated Section 33-6-413.

> Although the Act's pre-suit notice requirement, Tennessee Code Annotated section 29-26-121, applies to all health care liability claims under the Act, the same is not true for whether expert testimony is required under Tennessee Code Annotated section 29-26-122. '[A]dditional analysis is needed to determine whether expert proof is necessary.' *Osunde*, 505 S.W.3d at 887 (citing *Smith v. Testerman*, No. E2014-00956-COA-R9-CV, 2015 WL 1118009, at *5 (Tenn. Ct. App. Mar. 10, 2015), *perm. app. denied* (Tenn. June 15, 2015)); *see also Estate of Bradley v. Hamilton Cnty.*, No. E2014-02215-COA-R3-CV, 2015 WL 9946266, at *5 (Tenn. Ct. App. Aug. 21, 2015) (quoting *Smith*, 2015 WL 1118009, at *4) (stating that expert testimony is not required 'if the negligence is obvious and readily understandable by an average layperson').
>
> Courts determine on a case-by-case basis whether expert testimony is necessary in a health care liability case.
>
> * * *
>
> What all of these cases have in common is the fundamental consideration of whether the conduct at issue involved the exercise of medical judgment or skill. In other words, whether the alleged negligent conduct involved technical or specialized knowledge of a medical procedure or a patient's medical condition or whether the alleged negligent conduct involved medical decision-making – such as determining the type of treatment or procedure to perform or the type of equipment or medicine to use. If so, then expert proof would be necessary. As Professor King has suggested, this inquiry might be phrased as whether '[t]he specific decision making by the health care provider ... involve[d] the exercise of uniquely professional medical skills, a deliberate balancing of medical risks and benefits, or the exercise of therapeutic judgment.' *The Common Knowledge Exception, supra*, at 56.

602 S.W.3d at 350 (footnote omitted).

Neither party has filed a supplemental brief addressing the *Jackson* decision. In any event, at this stage of the proceedings, based solely on the allegations of the complaint, the Court is without sufficient information to determine whether the conduct at issue – compliance with a statutory judicial hearing requirement – requires the exercise of medical judgment or skill as described in *Jackson.* Thus, dismissal at this stage is not appropriate.

16

## IV. Conclusion

For the reasons set forth above, Defendant Ryan Storm and Marcus Darden's Motion to Dismiss Second Amended Complaint (Doc. No. 41), Defendant Brittany McElwee, Edin Plancic, and Nicholas Carroll's Motion to Dismiss Second Amended Complaint (Doc. No. 54), Defendant Officer Merriweather's Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. No. 58), and Defendant Vanderbilt University Medical Center's Rule 12(c) Motion for Judgment on the Pleadings (Doc. No. 70) are **DENIED.** Defendant Vanderbilt University Medical Center's Motion to Exclude Plaintiff's Notice of Filing Interrogatory Response and Related Documents (Doc. No. 85) is **DENIED,** as moot.

An appropriate Order shall enter.

_____
WILLIAM L. CAMPBELL, JR
UNITED STATES DISTRICT JUDGE